IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**THE FIRM, PLLC**                                                                                    **PLAINTIFF**

v.                                        Case No. 4:25-cv-00134-LPR

**OPTUMHEALTH CARE SOLUTIONS, LLC, et al.**                        **DEFENDANTS**

## ORDER

Today's Order addresses the propriety of a diversity-jurisdiction removal. Plaintiff is a law firm with Arkansas citizenship.[1] It filed a lawsuit in state court against several healthcare entities (the corporate Defendants) and one individual.[2] The corporate Defendants are all citizens of states

---

[1] *See* Third Am. Compl. (Doc. 15) ¶¶ 1, 10; Defs.' Notice of Removal (Doc. 1-3) ¶ 9. There's a quirk here. All versions of the Complaint and the Notice of Removal discuss only the Plaintiff law firm's state of incorporation and principal place of business. *See* Compl. (Doc. 2) ¶¶ 1, 7; Am. Compl. (Doc. 3) ¶¶ 1, 8; Second Am. Compl. (Doc. 12) ¶¶ 1, 9; Third Am. Compl. (Doc. 15) ¶¶ 1, 10; Defs.' Notice of Removal (Doc. 1-3) ¶ 9. But a PLLC's citizenship for diversity-jurisdiction purposes is not its state of incorporation or the state where its principal place of business is located. *Cf. GMAC Com. Credit LLC v. Dillard Dep't Stores, Inc.*, 357 F.3d 827, 828–29 (8th Cir. 2004). Instead, a PLLC's citizenship is the state or states where each of its individual members are citizens. *See id.* at 829. And the Court has not been told anything about Plaintiff's members or those members' states of citizenship. This raises a potential problem. "For a party to remove a case to federal court based on diversity jurisdiction, the parties must be diverse both when the plaintiff initiates the action in state court and when the defendant files the notice of removal . . . ." *Reece v. Bank of New York Mellon*, 760 F.3d 771, 777 (8th Cir. 2014) (internal quotation marks omitted) (quoting *Chavez-Lavagnino v. Motivation Educ. Training, Inc.*, 714 F.3d 1055, 1056 (8th Cir. 2013)). "This is not a mere technicality: we have an independent obligation to ensure the party asking us to exercise jurisdiction has proved we have jurisdiction to exercise." *Id.* at 777–78 (citing *Chavez-Lavagnino*, 714 F.3d at 1057).

Nonetheless, the Court is reasonably confident that the Plaintiff law firm is a citizen of Arkansas, and only Arkansas, for diversity-jurisdiction purposes. In Plaintiff's remand motion, Plaintiff implicitly—but clearly—concedes that its citizenship for diversity-jurisdiction purposes is Arkansas. Plaintiff does so by arguing that the reason diversity does not exist is because "Alonzo Washington is a citizen of Arkansas." *See* Pl.'s Br. in Supp. of Obj. to Removal (Doc. 26) at 4. This argument only works if Plaintiff is also a citizen of Arkansas. Given Plaintiff's implicit concession that it's a citizen of Arkansas for diversity purposes, the Court will allow the corporate Defendants to amend their Notice of Removal and more appropriately allege the state or states of citizenship of the Plaintiff PLLC—using the correct metric this time. 28 U.S.C. § 1653 ("Defective allegations of jurisdiction may be amended, upon terms, in the trial or appellate courts."); *see also Iron Cloud v. Sullivan*, 984 F.2d 241, 243–44 (8th Cir. 1993) ("[Section] 1653 speaks of amending *allegations* of jurisdiction, which suggests that it addresses only incorrect statements about jurisdiction that actually exists, and not defects in the jurisdictional facts themselves." (emphasis in original) (internal quotation marks omitted) (citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989))). Within seven days of the date this Order, Plaintiff must file a declaration stating the citizenship of all Plaintiff's members at (1) the time the initial Complaint was first filed and (2) the time the case was removed. Within fourteen days of the date of this Order, Defendants are directed to amend their Notice of Removal with respect to Plaintiff's citizenship. No other amendments are authorized.

[2] *See* Third Am. Compl. (Doc. 15) at 1–2.

1

other than Arkansas.³ But the individual Defendant, Alonzo Washington, is a citizen of Arkansas.⁴ And as a general matter, when even one defendant has the same citizenship as a plaintiff, a federal court lacks diversity jurisdiction.⁵ So, you might ask, what is this case now doing in federal court?

That's a fair question, and it is the basis of Plaintiff's remand request. Plaintiff says that Mr. Washington is a citizen of Arkansas, and thus, the parties are not completely diverse.⁶ Sounds pretty open and shut, right? Alas, the law is not that simple. The corporate Defendants provide responsive arguments that deserve serious consideration. They say that Mr. Washington's citizenship should be ignored under the fraudulent-joinder doctrine.⁷ In the alternative, they say that Mr. Washington should be realigned as a plaintiff in this matter.⁸ And if they are right in either of these contentions, the Court would have diversity jurisdiction.⁹ The Plaintiff—or Plaintiffs (if Mr. Washington is realigned)—and Defendants would be completely diverse.¹⁰

As will be further explained below, resolving the disputed jurisdictional questions here requires the Court to interpret and (to some extent) evaluate the legal claims that Plaintiff brings in this case. Once that is accomplished, the Court will be in a better position to determine whether Mr. Washington was fraudulently joined to this lawsuit and whether, if he belongs in this lawsuit at all, Mr. Washington should be treated as a plaintiff instead of a defendant.

---

³ *See* Defs.' Notice of Removal (Doc. 1-3) ¶¶10–13.

⁴ Third Am. Compl. (Doc. 15) ¶ 6. Although the state of Mr. Washington's citizenship was previously contested, all parties now agree that Mr. Washington is a citizen of Arkansas. *See* Defs.' Br. in Opp'n to Pl.'s Mot. to Remand (Doc. 29) at 3 n.1.

⁵ *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff." (emphasis in original)).

⁶ This is the only basis on which Plaintiff seeks remand. Plaintiff does not, for example, contend that the amount-in-controversy is less than $75,000. Nor does Plaintiff contend that removal was untimely.

⁷ *See* Defs.' Br. in Opp'n to Pl.'s Mot. to Remand (Doc. 29) at 3–8.

⁸ *See id.* at 7–8.

⁹ *See id.*

¹⁰ *See id.*

## BACKGROUND

According to the Third Amended Complaint, Plaintiff is a full-service law firm based in North Little Rock.[11] Plaintiff represented Alonzo Washington in a different case concerning an automobile accident.[12] That case resulted in a settlement agreement.[13] Under the provisions of the settlement agreement, Mr. Washington was paid approximately $340,000.[14] And, in consideration for that payment, Mr. Washington—and maybe Plaintiff depending on how one reads the settlement agreement—agreed to several things regarding medical expenses relating to the accident.[15] The settlement agreement included the following pertinent provisions:

- "For the sole consideration of . . . $339,062.75 . . . [Alonzo Washington and The Firm, PLLC] hereby release, acquit, and forever discharge [specified persons and entities], along with their insurer, UNITED FINANCIAL CASUALTY COMPANY, and their agents, employees, representatives, and any subsidiary . . . of and from any and all actions, causes of action, claims and demands, damages, costs, loss of services, expenses and compensation on account of or in any way growing out of any and all known and unknown personal injuries, economic damages or property damages resulting, or to result from, an accident which occurred on or about the 5th day of May, 2018, on Hwy. 65 in Chicot County, Arkansas."[16]

- "I [Alonzo Washington] agree to indemnify and hold harmless the parties herein released from all further claims or demands, costs, or expenses, and from the benefits provided to or on my behalf which are related to the incident giving rise to this claim including, but not

---

[11] Third Am. Compl. (Doc. 15) ¶ 10.

[12] *See id.* ¶¶ 14–15; Pl.'s Br. in Supp. of Obj. to Removal (Doc. 26) at 1.

[13] *See* Third Am. Compl. (Doc. 15) ¶ 15; Pl.'s Br. in Supp. of Obj. to Removal (Doc. 26) at 1.

[14] *See* Ex. A (Release and Settlement Agreement) to Defs.' Br. in Opp'n to Pl.'s Mot. to Remand (Doc. 29-1) at 1. Although the Third Amended Complaint refers to the settlement, the Third Amended Complaint does not include the settlement as an exhibit. The settlement itself was submitted to the Court by the corporate Defendants in their Opposition to Plaintiff's Motion to Remand. *See id.* Nonetheless, the Court may consider the content of the settlement agreement for purposes of the instant Motion because, *inter alia*, it is a document embraced by the Operative Complaint. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) ("In general, materials embraced by the complaint include 'documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings.'" (quoting *Ashanti v. City of Golden Valley*, 666 F.3d 1148, 1151 (8th Cir. 2012))). A document is embraced by a complaint when, among other things, it is "incorporated by reference or integral to the claim, . . . [appears] in the record of the case, [or is] attached to the complaint . . . ." *See id.* (quoting *Miller v. Redwood Toxicology Lab'y, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012)); *see also Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (same).

[15] *See* Ex. A (Release and Settlement Agreement) to Defs.' Br. in Opp'n to Pl.'s Mot. to Remand (Doc. 29-1) at 1–3, 5.

[16] *Id.* at 1.

limited to, any state or federal governmental agency, Medicare, Medicaid, insurance companies, physicians, and health care institutions."[17]

- "My attorney [The Firm, PLLC] and I [Alonzo Washington] agree to satisfy, from the consideration paid to me, any and all valid judgments, liens, subrogation interests, or claims of any nature or kind whatsoever relating to or arising from the matters alleged related to the accident including, but not limited to, hospital liens, physician liens, claims, or interests; medical liens, claims, or interests including Medicare or Medicaid; workers' compensation liens, claims, or interests; and other governmental liens, claims, or interests. We [Alonzo Washington and The Firm, PLLC] further expressly and specifically agree to indemnify and hold harmless the released parties, their insurance carrier and their counsel from any and all costs or fees incurred as a result of our failure to properly satisfy or release any such liens."[18]

- "The undersigned makes the following warranties . . . [Warranty 3:] Medicaid or Medicare has made conditional payments for certain medical expenses or prescriptions related to this claim. My attorney [The Firm, PLLC] and I [Alonzo Washington] have reached an agreement with Medicaid or Medicare regarding its lien, and the lien will be paid from this settlement . . . ."[19]

- "It is further expressly understood and agreed, to the extent applicable, my attorney [The Firm, PLLC] and I [Alonzo Washington] will set aside funds necessary, in any approved Medicare Set Aside Account, to pay for any anticipated future medical or health care needs for any injury or condition which requires treatment that arises from the injuries related or caused by the accident in question."[20]

As it turns out, there ended up being some unpaid bills for medical care that arose out of the car accident.[21] And the instant case revolves around the payment of those bills.[22] In the Spring of 2021, the corporate Defendants contacted Plaintiff and demanded payment of the outstanding bills.[23] The corporate Defendants threatened a lawsuit (and professional conduct complaints) if

---

[17] *Id.* at 2.

[18] *Id.* at 3.

[19] *Id.* at 4–5.

[20] *Id.* at 5.

[21] *See* Third Am. Compl. (Doc. 15) ¶ 15; Defs.' Br. in Opp'n to Pl.'s Mot. to Remand (Doc. 29) at 2.

[22] *See generally* Third Am. Compl. (Doc. 15).

[23] *See id.* ¶¶ 16, 49–53 (alleging that, although the corporate Defendants did not directly participate in all the alleged actions in the Third Amended Complaint, they are still responsible for the acts of their agents under a respondeat-superior theory).

payment was not made.[24]  The corporate Defendants "stated that such claims against law firms and attorneys had been codified via case law and that Plaintiff would be on the hook for substantial attorney's fees if the funds were not paid."[25]  In response to the corporate Defendants' demand and threats, Plaintiff sent them the requested $35,000 payment from funds "earmarked to" Plaintiff.[26]  The corporate Defendants accepted the payment.[27]

Plaintiff clearly believes the corporate Defendants were not entitled to Plaintiff's $35,000.  Plaintiff sets out two main reasons for this view.  Plaintiff's front-line assertion appears to be that neither Plaintiff nor Mr. Washington owed the money to the corporate Defendants.[28]  Plaintiff's fallback assertion appears to be that, if one of them owed the money, it had to be Mr. Washington.[29]  Ultimately, in the Third Amended Complaint, Plaintiff seeks $35,000 plus punitive damages from the corporate Defendants for conversion and/or unjust enrichment.[30]  Plaintiff does not seek money from Mr. Washington.  Plaintiff does not allege that Mr. Washington is liable for conversion.[31]  And Plaintiff does not allege that Mr. Washington is liable under the unjust-enrichment doctrine.[32]

Nonetheless, Mr. Washington does appear to be implicated in some of Plaintiff's declaratory-judgment requests.  The Third Amended Complaint asks the Court to declare several different things.  Two of those requests are specific to the corporate Defendants only.  The Court is asked to declare (1) "that [Plaintiff] had no financial obligation to the [corporate] Defendants[,]"

---

[24] *See id.* ¶¶ 16, 19, 20.

[25] *Id.* ¶ 20.

[26] *Id.* ¶¶ 16–17.

[27] *Id.* ¶ 18.

[28] *See id.* ¶¶ 38, 40.

[29] *See id.* ¶ 40.

[30] *See id.* at 5–6.

[31] *See id.* ¶¶ 41–43.

[32] *See id.* ¶¶ 44–48.

and (2) "that the [corporate] Defendants inured no benefit to the Plaintiff to justify the payment and . . . [are lawfully required] to repay the Plaintiff $35,000.00."[33] Those two requests cannot possibly be characterized as concerning Mr. Washington in any way. But the remaining declaratory-judgment requests are different. The Court is asked to declare (1) "the rights and obligations between the [p]arties in regard to the $35,000.00 in dispute[,]" (2) "that any funds owed to the [corporate] Defendants are the sole responsibility of [Mr.] Washington[,]" (3) "that . . . not even [Mr.] Washington owed . . . [the money] to the [corporate] Defendants[,] and (4) "that the [corporate] Defendants provided no financial benefit to [Mr.] Washington."[34] These four requests do seem to involve Mr. Washington and what, if any, obligation he has to pay the corporate Defendants or reimburse Plaintiff.

## ANALYSIS

"[F]ederal courts are courts of limited jurisdiction . . . ."[35] That is true whether the case was (1) originally filed in federal court or (2) originally filed in state court and then removed to federal court by one or more defendants.[36] In the latter circumstance, if the Court concludes it lacks jurisdiction over all of the claims in a case, the Court must remand the case back to the state court from whence it came.[37] That is what Plaintiff asks the Court to do with the instant case.

The Court will not remand this case. That is because the Court has diversity jurisdiction. Diversity jurisdiction requires the amount-in-controversy to be over $75,000.[38] That's true here

---

[33] *Id.* ¶¶ 38–39.

[34] *Id.* ¶¶ 37, 40.

[35] *Royal Canin U.S.A., Inc., v. Wullschleger*, 604 U.S. 22, 28 (2025).

[36] *See id.* at 27–28.

[37] *Id.* at 28.

[38] 28 U.S.C. § 1332(a) ("[D]istrict courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . .").

because of the request for $35,000 *plus punitive damages*.[39]  Diversity jurisdiction also requires the parties to be completely diverse.[40]  That's true here because the only Arkansas Defendant (Mr. Washington) has been fraudulently joined.

"Fraudulent joinder is an exception to the complete diversity [requirement]."[41]  The fraudulent-joinder rule provides that "a plaintiff cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'"[42]  On one hand, "joinder is fraudulent when there exists no reasonable basis in fact and law supporting a claim against the resident defendant[]."[43]  On the other hand, joinder is not fraudulent where "there is a 'colorable' cause of action—that is, [where] state law *might* impose liability on the resident defendant under the facts alleged . . . ."[44]  In conducting this inquiry, "the district court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor."[45]  And "[a]ll doubts about federal jurisdiction should be resolved in favor of remand to state court."[46]

---

[39] *See* Third Am. Compl. (Doc. 15) ¶¶54–55.  The Eighth Circuit is clear that "punitive damages are included in the amount in controversy . . . [if they are] supported by competent proof."  *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 348 (8th Cir. 2007) (internal quotation marks omitted) (quoting *Larkin v. Brown*, 41 F.3d 387, 388 (8th Cir. 1994)).

[40] *See* 28 U.S.C. § 1332(a); *Cf. OnePoint Sols.*, 486 F.3d at 346 ("Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship.").

[41] *See Johnson v. Midwest Div. - RBH, LLC*, 88 F.4th 731, 735 (8th Cir. 2023) (citing *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010)); *see also Murphy v. Aurora Loan Servs., LLC*, 699 F.3d 1027, 1031 (8th Cir. 2012) ("The doctrine of fraudulent joinder allows a district court to assume jurisdiction over a facially nondiverse case temporarily and, if there is no reasonable basis for the imposition of liability under state law, dismiss the nondiverse party from the case and retain subject matter jurisdiction over the remaining claims.").

[42] *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 976 (8th Cir. 2011) (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)).

[43] *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003) (internal quotation marks omitted) (quoting *Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 871 (8th Cir. 2002)).

[44] *Filla*, 336 F.3d at 810 (emphasis in original).

[45] *Id.* at 811.

[46] *Knudson*, 634 F.3d at 975 (internal quotation marks omitted) (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 446 (8th Cir. 2010)).

As discussed in the Background Section above, Plaintiff's conversion and unjust enrichment claims are not brought against Mr. Washington.[47]  Mr. Washington is only implicated in Plaintiff's requests for declaratory judgment.[48]  Under Arkansas law, "[i]t is well settled that an action brought pursuant to [Arkansas's] Declaratory Judgment Act is intended to supplement, rather than supersede, ordinary causes of action."[49]  That is, the declaratory-judgment mechanism "is not a substitute for an ordinary cause of action . . . ."[50]  The use of the mechanism "is dependent on and not available in the absence of a justiciable controversy."[51]

Here, the Third Amended Complaint does not allege any tortious, contract-breaching, or otherwise unlawful conduct by Mr. Washington.  It does not allege any threat or promise by Mr. Washington to engage in tortious, contract-breaching, or otherwise unlawful conduct.  It does not seek any money from Mr. Washington.  And it does not suggest that there are any future outstanding medical payments as to which the proper payee is at issue.  So what is there for the Court to declare that would resolve an actual controversy between Plaintiff and Mr. Washington?

The answer is "nothing."  As to the $35,000 Plaintiff already paid to the corporate Defendants, Plaintiff wants it back from the corporate Defendants.[52]  Plaintiff is not seeking it from Mr. Washington, and there is no allegation Plaintiff ever sought it from Mr. Washington.[53]

---

[47] *See supra* p. 5.

[48] *See supra* pp. 5–6.

[49] *City of Fort Smith v. Didicom Towers, Inc.*, 362 Ark. 469, 474, 209 S.W.3d 344, 348 (2005).

[50] *Id.* (citing *Wilmans v. Sears, Roebuck and Co.*, 355 Ark 668, 144 S.E.2d 204 (2004)).

[51] *Martin v. Equitable Life Assurance Soc'y of the U.S.*, 344 Ark. 177, 181, 40 S.W.3d 733, 736 (2001) (citing *Donovan v. Priest*, 326 Ark. 353, 359–60, 931 SW.2d 119, 122 (1996)).

[52] *See* Third Am. Compl. (Doc. 15) at 6 ("Plaintiff prays for judgment against the [corporate] UHI Defendants for $35,000.00 . . . .").

[53] Even if Plaintiff was seeking the $35,000 from Mr. Washington, he could do so by way of a normal monetary-damages action, and thus, there is no need for a declaratory-judgment action.  *Cf. City of Fort Smith*, 362 Ark. at 474, 209 S.W.3d at 348 ("Indeed, when another action between the same parties, in which all issues could be determined, is actually pending at the time of the commencement of a declaratory-judgment action, the court abuses its discretion

As to future medical payments, there is no allegation that there are any or will be any such payments. In this context, there is no justiciable controversy between Plaintiff and Mr. Washington to support a declaratory-judgment request. And there's no reasonable basis in law or fact to suggest otherwise.[54]

Accordingly, the Court agrees with the corporate Defendants that Mr. Washington was fraudulently joined. The Clerk of the Court is directed to remove Mr. Washington as a party Defendant in this case. He is dismissed. And, as a result of excluding him from the diversity-jurisdiction analysis, complete diversity exists between the Plaintiff and Defendants in this case. So the remand motion is denied.[55] Finally, the parties are directed to proceed consistent with Footnote 1 in this Order.

IT IS SO ORDERED this 30th day of September 2025.

_____
LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

when it entertains jurisdiction." (first citing *UHS of Ark., Inc. v. Charter Hosp. of Little Rock, Inc.*, 297 Ark. 8, 759 S.W. 204 (1988); and then citing *City of Cabot v. Morgan*, 228 Ark. 1084, 312 S.W.2d 333 (1958))).

[54] Although Plaintiff did not assert that Mr. Washington is an indispensable party under Federal Rule of Civil Procedure 19 (or Rule 19 of the Arkansas Rules of Civil Procedure), the Court has considered the question. The Court does not believe Mr. Washington is an indispensable party. Complete relief can be accorded in his absence because the Court can order, if appropriate, the corporate Defendants to pay Plaintiff $35,000 plus punitive damages. And, just to scratch the surface of Federal Rule of Civil Procedure 19(a)(1)(B), Mr. Washington has not "claim[ed] an interest relating to the subject matter of the action . . . ."

[55] The Court need not reach the precise arguments made in the corporate Defendants' Brief in Opposition to Plaintiff's Motion to Remand. *See* Doc. 29. Because the question before the Court is jurisdictional in nature, the Court is not limited to the arguments raised by the parties. *See Int'l Ass'n of Fire Fighters, Loc. 2665 v. City of Clayton*, 320 F.3d 849, 850 (8th Cir. 2003) ("[F]ederal courts are under an independent obligation to examine their own jurisdiction . . . ." (internal quotation marks omitted) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990))).